[Civ. No. 15221. Second Dist., Div. Two. Apr. 17, 1946.]

HELEN MARKULICS, Appellant, v. MAICO COMPANY, INC., etc. et al., Respondents.

Earl Malmrose and A. James Ayers for Appellant.

Crider, Runkle & Tilson for Respondents.

MOORE, P. J.—Appellant was denied recovery on her action for damages resulting from the breach of an implied warranty of the fitness of a hearing aid. The instrument consisted of (1) a bakelite amplifier to be attached to her garment between the breasts; (2) batteries contained in a cloth case to be strapped to the outside of the left thigh; (3) a belt to extend around the abdomen; (4) an ear mold fitted into the left ear, and (5) insulated wires connecting the batteries with the ear piece and the microphone. On June 3, 1943, she contracted for the purchase of the device, received it on June 11, wore it each day until the 17th when, while at work, she felt an itching sensation near her left breast under

the microphone and on the left thigh beneath the battery. She promptly "placed a napkin and a handkerchief underneath the battery and also on my breast." Shortly thereafter the device lost its power. On arriving at her home she discovered multiple third-degree burns on the thigh where she had worn the battery and under the left breast. She had second-degree burns on her abdomen. The third-degree burns were green or greenish black like the color of the B battery. The sack which contained the battery and her upper stocking near the thigh burns were also of a greenish color. The attending physician testified that the second-degree burns had healed in December, 1944, but that plaintiff was nervous, and her scars on the thigh and breast were visible in March, 1945.

Appellant contends that the evidence does not support the finding that the hearing aid and accessories were fit for the purpose for which they were intended. On the contrary appellant's testimony that she had successfully used the device for five days prior to the burn disproves such contention. The record is devoid of evidence of the device's lack of efficacy as an aid to hearing.

The trial court by processes of deduction and elimination derived that the burns could have been caused by the hearing aid in only two ways: (1) by chemicals from the batteries; (2) by electricity generated thereby. Since the batteries were dry cells and contained no violent acid, such burns could not have been caused by them. The absence of corrosion from their exterior is proof that no dangerous chemicals leaked or exuded from the cells. Their freedom from acid contents was established also by the fact that the sack which held them was not in the least impaired. Such would indubitably have followed the leak of destructive chemicals. Even had the batteries contained sulphuric acid there was no means by which it could have reached the abdomen which was encircled with a harmless piece of cloth or the breasts against which was suspended her brassiere underneath the innocent plastic microphone.

Conceding, arguendo, that the current generated by the B battery was of sufficient power to effect a third-degree burn, clearly it could not have done so without first destroying the insulation of the connecting wires which had suffered no deterioration. Such a current would also have burned the battery bag if not the napkin and handkerchief inserted to avoid

the pricking sensation. None of these was in the least impaired, nor did the brassiere give proof of electrical heat. On the contrary, the battery did not have sufficient voltage to cause a flesh burn. ██ It was proper for the court to take judicial notice of the impotence of a B battery to develop fire. (20 Am.Jur., p. 111, § 97; 31 C.J.S., § 9, p. 510; *People* v. *Associated Oil Co.*, 211 Cal. 93, 105 [294 P. 717]; *Coughlin* v. *Great Western Power Co.*, 183 Cal. 548, 551 [191 P. 920].) Judges cannot pretend to be ignorant of what is within the knowledge of most men of their jurisdictions. (*Varcoe* v. *Lee*, 180 Cal. 338, 346 [181 P. 223]; 31 C.J.S., § 9, p. 513.)

██ Moreover, the facts (1) that the area affected on the thigh had burns of five or six different sizes in a space six inches square and (2) that they were greenish black indicate that some substance, and not an electric current, operated on the thigh as well as on the breast. The undergarments in both places were free from such colors. No explanation is offered of the group of burnt splotches instead of a continuous blistered area. The court's inferences from the physical facts are not irrational or arbitrary but are reasonable and logical and therefore support its findings. (*Patten & Davies Lumber Co.* v. *McConville*, 219 Cal. 161, 164 [25 P.2d 429]; *Morse* v. *Custis*, 38 Cal.App.2d 573, 576 [101 P.2d 702].)

██ Appellant deems herself aggrieved by the failure of the court to make findings upon her allegations with reference to (1) respondents' warranty of the fitness of the device, (2) its defective condition, (3) the numerous items of damage suffered, and (4) the demand for a cancellation of the written contract for the purchase of the hearing aid. The answer thereto is in the findings that appellant suffered no damage by the use of the instrument and that the device and accessories were "then reasonably fit for the purpose for which it was to be used" and were not defective. The prayer is not an allegation of fact and therefore requires no finding.

The issues were thoroughly explored and they were settled by reasonable deductions and inferences and correct conclusions.

Judgment affirmed.

McComb, J., and Wilson, J., concurred.